Nancy **GERBA** et al., Appellants,

v.

**NEUROLOGICAL HOSPITAL ASSOCIA-
TION**, a Corporation et al., Respondents.

No. 52475.

Supreme Court of Missouri,
Division No. 1.

June 12, 1967.

Donald E. Raymond, Kansas City, for appellants, Woods, Raymond & Raymond, Kansas City, of counsel.

Jack G. Beamer, Robert J. Mann, McKenzie, Williams, Merrick, Beamer & Stubbs, Kansas City, for respondents.

HOLMAN, Presiding Judge.

In the first count of the petition plaintiff Nancy Gerba sought to recover damages in the sum of $150,000 for injuries she received while a patient in the hospital owned by defendant Neurological Hospital Association. Her husband, Pete Gerba, sought to recover a like amount, in the second count, for medical expenses and loss of services and consortium. A motion to dismiss plaintiffs' petition was sustained. Plaintiffs have duly appealed from the ensuing judgment.

The suit was originally filed against the hospital association, the hospital administrator, and four other individuals who were alleged to have been partners engaged in the business of operating the hospital under a contractual arrangement. The only individual defendant properly served was Dr. Albert E. Fulton and the action was apparently abandoned as to the other individual defendants. Dr. Fulton joined with Neurological in the motion to dismiss.

The petition (which was filed June 22, 1966) alleged that the hospital was operated "for the treatment of human physical and mental illness of patients for payment of money by said patients. * * * That on or about the 25th day of June, 1961, plaintiff Nancy Gerba was suffering from a severe mental and emotional derangement and illness [which] caused said plaintiff to be likely to inflict injury upon herself and others thereby constituting a danger to her own well being as well as the well being of others, and for the treatment of such derangement and illness plaintiff was placed in the care and under the charge of defendants in the hospital aforesaid so operated by them. That defendants, acting as aforesaid, being advised that this plaintiff was suffering from such mental and emotional illness, undertook for money charged and agreed to be paid to furnish hospital facilities for the detention of plaintiff and treatment of such mental and emotional illness and did take charge of the person

of plaintiff and did hold her at said hospital. That defendants knew that plaintiff Nancy Gerba was suffering from the mental and emotional illness aforesaid and knew or should have known that by reason of her said deranged condition she was likely to cause injury to herself, but that defendants carelessly and negligently failed to furnish supervision and surveillance over the person of plaintiff and permitted her to be wholly unattended and alone and without restraint thereby enabling her to inflict the severe personal injuries to herself hereinafter set forth. That as the direct result of the carelessness and negligence of the defendants aforesaid, plaintiff Nancy Gerba, while alone, unattended and unrestrained and acting under the compulsion of her mental and emotional illness aforesaid did gouge out both of her eyes thereby rendering herself totally and permanently blind."

The motion to dismiss was based on two grounds. They were (1) that "since said alleged acts occurred more than two years prior to the filing of this action they are barred by the Missouri Revised Statutes, § 516.140, relating to limitation of actions against physicians, surgeons, dentists, roentgenologists, nurses, hospitals and sanitariums for damages for malpractice, error or mistake" and (2) "defendant Neurological Hospital Association of Kansas City, as a non-profit organization established for charitable, eleemosynary and teaching purposes, is immune to suits for personal injuries alleged to have been suffered by plaintiff Nancy Gerba, while a patient in defendant hospital due to the negligence of defendants' agents and servants."

The trial court sustained the motion to dismiss on both grounds. Since we have concluded that the action is barred by the statute of limitations we will give no further consideration to the second ground of the motion.

The relevant portion of § 516.140 (statutory references are to RSMo 1959, V.A.M. S.) is that "[a]ll actions against physicians, surgeons, dentists, roentgenologists, nurses, hospitals and sanitariums for damages for malpractice, error, or mistake shall be brought within two years from the date of the act of neglect complained of." Our task in this case is to ascertain the meaning of said section primarily as it relates to hospitals and sanitariums. It is the contention of plaintiffs that the quoted statute does not apply because this is not a malpractice action but is an action based on "ordinary negligence" not involving professional misconduct. Defendants, on the other hand, claim that the action is barred by the statute since the statute is very general and inclusive and is applicable to all actions against hospitals for malpractice, error or mistake, or neglect; that those descriptive words would clearly include the acts and omissions alleged in the petition.

"Where the meaning of a statute is clear there is no occasion for its construction and the courts will apply it as written. However, when the meaning is doubtful it becomes the duty of the courts to construe it. It is elementary that the primary rule to be applied in the construction of a statute is to ascertain and give effect to the legislative intent." Foremost Dairies, Inc. v. Thomason, Mo.Sup., 384 S.W.2d 651, 659. We consider it helpful to consider the definition of various words contained in the statute, as given in Webster's Third New International Dictionary. Malpractice: "a dereliction from professional duty whether intentional, criminal, or merely negligent by one rendering professional services that results in injury, loss, or damage to the recipient of those services or to those entitled to rely upon them * * *." Error: "An act that through ignorance, deficiency, or accident departs from or fails to achieve what should be done." Mistake: "a wrong action or statement proceeding from faulty judgment, inadequate knowledge, or inattention: an unintentional error." Neglect: "to fail to attend to sufficiently or properly: not give proper attention or care to."

When the statute is considered as a whole, and especially with reference to the meaning of the specific words here involved, we think it clearly means that all actions are barred thereby in which damages are sought for any malpractice, error, mistake, or neglect in the care, custody, or treatment of a patient by a hospital. We find it difficult to understand plaintiffs' contention that there is a difference between "ordinary negligence" and negligence relating to malpractice. We do agree that if a patient was injured by a fall when he stepped on a slick foreign object which had been left on the floor of the hospital the statute in question would not likely be considered applicable. However, if the act or omission relates to the care, custody, or treatment of the patient, we think, as stated, that the statute would apply. In this case it is alleged that plaintiff was placed in the hospital for detention and treatment.

· In considering the question before us it is perhaps desirable to indicate our view that in the handling of patients suffering from mental disease the matter of custody and restraint is inextricably connected with the subject of the treatment to be administered. It would appear that the only certain way to keep a conscious mental patient from injuring himself or someone else would be to bind his hands and feet. That method of restraint, however, would·not be tolerated except for brief periods of time in extreme cases. "[T]he care required of a hospital includes giving such care to a patient as the hospital knew or in the exercise of reasonable care should have known ·was required. * * * A hospital is not an insurer of a patient's safety and is not required to guard against that which a reasonable person under the circumstances would not anticipate. * * * [T]he objective is treatment not merely incarcera-tion. Treatment requires the restoration of confidence in the patient. This in turn requires that restrictions be kept at a minimum. Risks must be taken or the case left as hopeless." Baker v. United States, D.C., 226 F.Supp. 129, 132, aff'd 8 Cir., 343 F.2d 222. See also Gregory v. Robinson, Mo.Sup., 338 S.W.2d 88 [4].

No case has been cited (and we have found none) in which the precise question here involved has been determined. Plaintiffs strongly rely on the case of Stallman v. Robinson, 364 Mo. 275, 260 S.W.2d 743, which apparently involved the same hospital as in the instant case. In that case the plaintiff recovered damages because his wife (with a record of previous attempts) committed suicide by hanging while a patient in the hospital. Plaintiffs point out that in Stallman we said that "this is not, strictly speaking, a malpractice case. There is neither claim nor proof of improper diagnosis or treatment * * *." 260 S.W.2d 748. However, Stallman did not involve any question concerning the application of the statute of limitations. The foregoing statement was made as a part of the discussion preceding our holding that it was not necessary for the plaintiff to produce expert testimony in order to make a submissible case of negligence. We do not think the quoted statement supports the contentions of plaintiffs in the case before us.

In view of what we consider to be the plain meaning of § 516.140, we hold that plaintiffs' claims, on the face of the petition, are barred by said statute and hence that the court did not err in sustaining defendant's motion to dismiss.

The judgment is affirmed.

All concur.