**Barbara ROWLAND and Ronald Rowland, husband and wife, Plaintiffs,**

v.

**SKAGGS COMPANIES, INC., Defendant-Appellant,**

v.

**Jose FISCHER, M.D., Third-Party Defendant-Respondent.**

**No. 65192.**

Supreme Court of Missouri, En Banc.

March 20, 1984.

Danny L. Curtis, Randy W. James, Kansas City, for defendant-appellant.

James Borthwick, James Bandy, Kansas City, for third-party defendant-respondent.

WELLIVER, Judge.

Appellant Skaggs Companies, Inc., (Skaggs) appeals from an order of the Circuit Court of Clay County dismissing its third party petition for contribution filed against respondent Dr. Jose Fischer. The Western District affirmed the judgment of the trial court, holding that the two-year statute of limitations applicable to actions for damages against health care providers, § 516.105, RSMo 1978 [1], barred Skaggs' suit for contribution. We ordered the cause transferred and decide it as if on original appeal. Rules 83.02; 83.09. We reverse.

The incident from which the underlying suit arose occurred on November 20, 1978, when plaintiff Barbara Rowland took an overdose of the drug Elavil because of the allegedly negligent acts and omissions of Skaggs, whose pharmacy had filled Mrs. Rowland's prescription. Mrs. Rowland's physician, Dr. Fischer, had telephoned a prescription for 150 milligram capsules of Elavil to Skaggs' pharmacy. The doctor instructed an employee of Skaggs that Mrs. Rowland was to take one 150 milli-

---

1. All statutory references are to RSMo 1978 unless otherwise indicated.

gram capsule of Elavil at bedtime. Skaggs allegedly filled the prescription with 150 milligram capsules of Elavil, but negligently placed a label on the container indicating that the capsules contained twenty-five milligrams of Elavil. After discovering the discrepancy in dosage, Mrs. Rowland telephoned Dr. Fischer's office and was advised by his office assistant or nurse to take six of the twenty-five milligram capsules so as to equal her prescribed dosage of 150 milligrams. Mrs. Rowland then ingested six capsules of Elavil and sustained an overdose, requiring hospitalization and medical treatment.

Mrs. Rowland and her husband, Ronald Rowland, filed suit against Skaggs on October 24, 1980, seeking damages for personal injuries, medical expenses and loss of services resulting from the overdose. On August 14, 1981, approximately ten months after plaintiffs filed their original petition, and almost three years after Mrs. Rowland sustained the overdose, Skaggs filed a third party petition against Dr. Fischer, alleging that he, or his agent or employee, had negligently advised Mrs. Rowland to take six capsules without first verifying the accuracy of the prescription. The petition requested the court to apportion damages between Skaggs and Dr. Fischer according to their relative degree of fault in the event the jury adjudged Skaggs liable for Mrs. Rowland's injuries.

Dr. Fischer subsequently filed a motion to dismiss Skaggs' third party petition, contending that Skaggs' suit was barred by § 516.105. The circuit court sustained the motion to dismiss and entered an order dismissing Skagg's third party petition. Skaggs appealed the judgment to the Western District and the court of appeals affirmed. Citing prior decisions holding that the statute of limitations in § 516.105 was applicable to contract actions against health care providers, the Western District held that an action for contribution against a health care provider, being in the nature of an implied contract, likewise was subject to the two-year statutory limitation.

Our decision today in *State ex rel. General Electric Co. v. Gaertner*, 666 S.W.2d 764 (Mo. banc 1984), establishes the general rule that a third party suit for contribution from a joint tortfeasor can be filed during the pendency of the underlying suit, irrespective of the statute of limitations applicable to the underlying tort claim. The question presented in the case now before us is whether the statute of limitations governing medical malpractice claims, § 516.105, bars third party suits for contribution against health care providers that were not filed within the two-year statutory period therein provided. The statute, in pertinent part, provides:

All actions against physicians, hospitals, dentists, registered or licensed practical nurses, optometrists, podiatrists, pharmacists, chiropractors, professional physical therapists, and any other entity providing health care services and all employees of any of the foregoing acting in the course and scope of their employment, for damages for malpractice, negligence, error or mistake related to health care shall be brought within two years from the date of occurrence of the act of neglect complained of, ...

Section 516.105.

The statute, read in its entirety, reveals an unequivocal legislative intent to make only a specified class of suits brought against health care providers subject to the provision's two-year statute of limitations. The legislature qualified the all-inclusive opening phrase "[a]ll actions" with the words "for damages for malpractice, negligence, error or mistake related to health care ..." The legislature's use of the latter phrase evinces a desire to confine suits subject to the short statutory period in § 516.105 to those enumerated. *Cf. Harrison v. MFA Mutual Insurance Co.*, 607 S.W.2d 137, 146 (Mo. banc 1980); *Giloti v. Hamm-Singer Corp.*, 396 S.W.2d 711, 713 (Mo.1965); *Brown v. Morris*, 365 Mo. 946, 290 S.W.2d 160, 166 (Mo. banc 1956). Giving the words of the statute their plain and ordinary meaning, we believe § 516.-105 encompasses those actions where the consumer of health services seeks damages

for injuries resulting from some improper, wrongful or careless acts or omissions on the part of a health care provider in the delivery of health care to the consumer. *See Gerba v. Neurological Hospital Association,* 416 S.W.2d 126, 127 (Mo.1967); *National Credit Associates, Inc. v. Tinker,* 401 S.W.2d 954, 959 (Mo.App.1966).

The statute also has been interpreted to govern in cases where its terms comprehend the substance of the health care consumer's claim. As the court of appeals correctly observed, § 516.105 has been held applicable in cases where a consumer of health care sued a health care provider for breach of contract. *See Barnhoff v. Aldridge,* 327 Mo. 767, 38 S.W.2d 1029 (1931); *State ex rel. Sisters of St. Mary v. Campbell,* 511 S.W.2d 141 (Mo.App.1974); *National Credit Associates, Inc. v. Tinker, supra.* Relying on these cases, along with the legislature's use of the phrase "[a]ll actions," the Western District concluded that an action for contribution against a health care provider fell within the ambit of § 516.105. We believe the court of appeals construed the holdings in these decisions too broadly. In each of the cited cases, the claim asserted against the health care provider arose from some improper or negligent act by the health care provider. The suit in each case, however, was framed as an action for breach of contract in an attempt to avoid the two-year statute of limitations in § 516.105. Looking at the substance, not the form, of the action, we ruled that the suits were to be governed by § 516.105. Properly interpreted, *Barnhoff, Campbell* and *Tinker* hold that when a health care provider is liable under both tort and contract theories, the two-year statute of limitations provided by § 516.105 cannot be circumvented by denominating the suit as one in contract.

█ Examination of both the statutory language and the nature of Skaggs' claim against respondent convinces us that a suit for contribution is not subject to the provisions of § 516.105. While § 516.105 clearly covers all claims brought by consumers of health care services against health care providers for injuries related to such services, we find no words indicating a legislative intent to include suits for contribution among health care providers. In the instant case, Skaggs seeks contribution from respondent under the doctrine of *Missouri Pacific Railroad Co. v. Whitehead & Kales Co.,* 566 S.W.2d 466 (Mo. banc 1978), in the event it is adjudged liable to plaintiffs. Admittedly, this form of contribution is different from the statutory right to contribution among joint judgment debtors under § 537.060, RSMo Cum.Supp.1983. Nevertheless, we believe it is significant that the statutory action for contribution existed at the time the legislature enacted § 516.105 and that the drafters did not designate such an action for contribution as coming within the two-year limitation.

█ Nothing in the nature of a claim for contribution under *Whitehead & Kales* warrants subjecting such a claim to the statute of limitations governing suits for medical malpractice. Substantively, an action for contribution is neither grounded in tort nor reasonably related to the types of actions enumerated in § 516.105. Rather, it accrues from the existence of a joint obligation on a liability shared by tortfeasors. The right to contribution serves to rectify the unjust enrichment that occurs when one tortfeasor "discharge[s] a burden which both in law and conscience was equally the liability of another." Leflar, "Contribution and Indemnity Between Tortfeasors," 81 U.Pa.L.Rev. 130, 138 (1932). *See Safeway Stores, Inc. v. City of Raytown,* 633 S.W.2d 727, 730 (Mo. banc 1982); *Whitehead & Kales,* 566 S.W.2d at 469. We do not believe that § 516.105, so carefully drawn to protect the providers of health care against stale claims from health care consumers, was intended to deprive those same providers from fairly apportioning judgments among themselves in proportion to their degree of fault. Nor do we believe there is the same threat of stale claims in actions between health care providers that there is between consumers and providers of health care.

It makes no difference that the claim for contribution arises ancillary to a suit subject to § 516.105. By definition, a suit for contribution among tortfeasors must arise from some underlying tort action. Both our decisions and decisions from other jurisdictions demonstrate that this does not alter the independent nature of the cause of action for contribution. *See State ex rel. General Electric Co. v. Gaertner,* 666 S.W.2d at 764 at 766 and cases cited therein. We are not persuaded the legislature contemplated subjecting to § 516.105 suits which, while arising from the same factual setting as a suit governed by the statute, are substantively distinguishable from the actions for damages enumerated by the statute.

■ In summary, while the legislature may have intended "to treat malpractice actions differently from other actions," *Laughlin v. Forgrave,* 432 S.W.2d 308, 313 (Mo. banc 1968), we are convinced that actions for contribution against health care providers are fundamentally different from those actions enumerated in § 516.105. We believe the trial court erred when it held that the statute barred Skaggs' third party petition. We hold that a defendant in a suit where the underlying action is governed by § 516.105 may implead a third party defendant for contribution during the pendency of the timely filed underlying suit in the same manner as in *General Electric.*

The case is reversed and remanded for proceedings consistent with this opinion.

HIGGINS, BILLINGS and DONNELLY, JJ., concur.

BLACKMAR, J., dissents in separate opinion filed.

RENDLEN, C.J., and GUNN, J., dissent and concur in separate opinion of BLACKMAR, J.

BLACKMAR, Judge, dissenting.

I doubt that any opinion of this Court has played more hob with the legislature's intent than the principal opinion in this case does.

The present version of § 516.105, RSMo 1978 was enacted by Laws of Mo.1976, p. 767, Sec. 2. At the time the legislature passed this statute it had no reason to anticipate our decisions in *Missouri Pacific Railroad Co. v. Whitehead & Kales,* 566 S.W.2d 466 (Mo. banc 1978), or the corollary of an independent action for contribution as established by *Safeway Stores, Inc. v. City of Raytown,* 633 S.W.2d 727 (Mo. banc 1982). Had the legislature been aware of those decisions I am sure that it would have expressed its intent, and I have no doubt as to what that expression would have been.

The long history of the statutory predecessors of the present § 516.105 is discussed in great depth in *Laughlin v. Forgrave,* 432 S.W.2d 308 (Mo. banc 1968). In that case operating surgeons had sewed a rubber dam inside a patient during surgery in 1951. The foreign object was not discovered until further surgery was performed in 1962. The defendant pleaded the bar of the statute of limitations, relying on that portion of then § 516.140, RSMo 1959, relating to health providers and reading as follows:

> All actions against physicians, surgeons, dentists, roentgenologists, nurses, hospitals and sanitariums for damages for malpractice, error, or mistake shall be brought within two years from the date of the act of neglect complained of, ...

The plaintiff relied on the provisions of § 516.100, RSMo 1959 providing that statutes of limitations begin to run, not "... when the wrong is done ... but when the damage resulting therefrom is sustained and is capable of ascertainment...."

The Court held that the portion of § 516.140 quoted above was a special statute of limitations applicable to physicians, surgeons and other health care providers, that its explicit provisions were in irreconcilable conflict with § 516.100, and that the special provisions prevailed so as to bar the action, even though the plaintiff could not possibly have discovered the surgeons' negligence in time to file suit within the limitation period. The dissent argued that

§§ 516.100 and 516.140 could be read in harmony, but the majority opinion was emphatic and unequivocal, and it tendered to the legislature and to the public the Court's position as to the proper application of the statutes of limitations to the situation in which the wrongdoing was undiscoverable.

The legislative response to *Laughlin* came in 1976. The health care provisions were severed from § 516.140 and were included in a new section, later numbered 516.105, reading as follows:

All actions against physicians, hospitals, dentists, registered or licensed practical nurses, optometrists, podiatrists, pharmacists, chiropractors, professional physical therapists, and any other entity providing health care services and all employees of any of the foregoing acting in the course and scope of their employment, for damages for malpractice, negligence, error or mistake related to health care shall be brought within two years from the date of occurrence of the act of neglect complained of, except that a minor under the full age of ten years shall have until his twelfth birthday to bring action, and except that in cases in which the act of neglect complained of its introducing and negligently permitting any foreign object to remain within the body of a living person, the action shall be brought within two years from the date of the discovery of such alleged negligence, or from the date on which the patient in the exercise of ordinary care should have discovered such alleged negligence, whichever date first occurs, but in no event shall any action for damages for malpractice, error, or mistake be commenced after the expiration of ten years from the date of the act of neglect complained of.

This statute adopted very narrow exceptions dealing with specific inequity noted in *Laughlin* but generally affirmed, and even strengthened, the firm two-year bar. It did not establish a broad exception based on "ascertainment," such as is found in § 516.100, but rather set out a specific exception applicable only to foreign objects.

Even as to these, it established a firm ten-year bar, without regard to discoverability of the wrong. The firmness of the general two-year period is also shown by the portion of the 1976 act dealing with suits by minors. The new statute essentially started the period of limitation running against minors as they reach the age of 10, rather than tolling the statute during minority. The conclusion is inescapable that the legislature intended to foreclose all claims against health providers for negligence or malpractice after two years, unless the plaintiff could point to a specific exception within the four corners of the special statute. Because of the legislature's unequivocal response, it would be highly irresponsible to overrule the firm holding in *Laughlin* that § 516.100 does not apply to the actions now encompassed by 516.105.

The citations of such cases as *Barnhoff v. Aldridge*, 327 Mo. 767, 38 S.W.2d 1029 (1931); *State ex rel. Sisters of St. Mary v. Campbell*, 511 S.W.2d 141 (Mo.App.1974); and *National Credit Associates, Inc. v. Tinker*, 401 S.W.2d 954 (Mo.App.1966), support my position and militate against the holding in the principal opinion. These cases hold that an artful pleader cannot avoid the firm bar of § 516.105, in an action which is essentially a malpractice action against a health care provider, by pleading the action as a contract action so as to have the benefit of the longer statute of limitations.

There is no warrant in reason or authority for such statements in the principal opinion as the following:

While § 516.105 clearly covers all claims brought by consumers of health care services against health care providers for injuries related to such services, we find no words indicating a legislative intent to include suits for contribution among health care providers. . . .

Of course there are no words! The legislature had no idea, in 1976, that a tortfeasor had an action, either directly or by third party proceedings, for contribution against a health care provider, in the ab-

sence of a joint judgment. What possible reason is there for assuming that the legislature had any purpose of treating *Whitehead & Kales* claimants more liberally than it treated the customers of health care providers?

The principal opinion gains absolutely nothing by arguing that the legislature in the 1976 act took no steps to include "the statutory right to contribution among joint judgment debtors under § 537.060" within the two-year bar of § 516.105. Of course it took no such steps! There was no need to. A plaintiff could not obtain a judgment against a health care provider, joint or otherwise, if the action were barred by the two-year statute of limitations. Unless there is a judgment against the health care provider, there is no statutory right to contribution.

The appellant places strong reliance on *Gramlich v. Travelers Insurance Co.*, 640 S.W.2d 180 (Mo.App.1982). The case does not help it. It simply holds that when malpractice is alleged to have caused death the wrongful death statute of limitations, § 537.100, RSMo Cum.Supp.1983 prevails over the provisions of § 516.105. The contest there was between two special statutes, not between a general statute and a special one. The case involved a problem that did not surface until 1979, when the limitation period for death actions was increased from one year to three. Before that time the death limitation was firmly applied to defeat claims which could not be barred by the terms of such statutes as 516.120, RSMo 1978, governing negligence. There would be no reason to hold that the exclusivity feature of the death statute was destroyed simply because the statute was lengthened.

The right of contribution, newly recognized in *Whitehead & Kales*, is not unlimited. The Court has been careful not to apply it in a disruptive way. Thus interfamilial immunity remains. *Kendall v. Sears, Roebuck & Co.*, 634 S.W.2d 176 (Mo. banc 1982). The ban of the workers compensation statutes precludes recovery of contribution from the plaintiff's employer.

*Parks v. Union Carbide Corp.*, 602 S.W.2d 188 (Mo. banc 1980); *State ex rel. Maryland Heights Concrete Contractors, Inc. v. Ferriss*, 588 S.W.2d 489 (Mo. banc 1979). The prevailing view seems to be that a plaintiff may settle with any tortfeasor in such a way as to bar an action for contribution against the settling litigant. *See* Milholland, "The Sequel to: Settlement by Covenant to Sue?" 31 J.Mo.B. 559 (1982). Under this state of the authorities, it is entirely in order to give effect to a firm, special statute of limitations.

As my opinion concurring in result shows, the "general rule" established by *State ex rel. General Electric Co. v. Gaertner*, 666 S.W.2d 764 (Mo. banc 1984) goes far beyond the necessities of that case, and is therefore *dictum*. Even so, the "general rule" is not appropriately applied to a case involving a special statute of limitations which is not subject to extension as other statutes of limitations are.

Nor is there any logic in the statements in the principal opinion as follows:

> § 516.105 encompasses those actions where the consumer of health services seeks damages for injuries resulting from some improper, wrongful or careless acts or omissions on the part of a health care provider in the delivery of health care to the consumer....

The principal opinion finds a "qualification" in the broad opening language referring to "all actions" in the phrase, "for damages for malpractice, negligence, error or mistake related to health care." The obvious purpose of the qualification is to distinguish actions related to health care from actions not so related, as, for example, if a patient slipped and fell on the newly waxed floor of a physician's office. *Cf. Gerba v. Neurological Hospital Association*, 416 S.W.2d 126, 128 (Mo.1967). The present action is clearly an action "for malpractice, negligence, error or mistake related to health care." It is idle to suggest that the legislature had any purpose of distinguishing between an action for contribution and an action for damages. As had been demonstrated earlier, it had no

way of knowing that a person in the position of this appellant would be able to file an action for contribution under the fact situation presented by this record.

The principal opinion would open up an extremely long limitation period in some cases. Discovery of a defect in a medicinal product might be delayed for as much as 20 years, as in the DES cases. *See, e.g., Bichler v. Eli Lilly and Co.,* 55 N.Y.2d 571, 450 N.Y.S.2d 776, 436 N.E.2d 182 (1982) (DES ingested in 1953; action filed in 1974). A manufacturer might then implead the treating physician, or, under *State ex rel. General Electric v. Gaertner, supra,* might wait until after judgment. That such a suit might be maintained would come as a distinct surprise to the legislators who tried to compose a firm two-year statute of limitations, with only carefully guarded exceptions, and who in 1976 took steps to tighten up the limitation period in infants' suits, which was the principal situation in which there might be a long delay. Now the Court imposes another exception, which we can say with perfect assurance that the legislature did not contemplate. Even if we assume that the defendant's claim for contribution against the physician was "undiscoverable," until it was sued on by the plaintiff, the legislature has excluded undiscoverable malpractice for § 516.-105 only in cases involving a "foreign object."

The majority, rather than suggesting fanciful reasons why the third party is not within the compass of § 516.015, should frankly admit that it has chosen to disregard that section in the interest of furthering the newly recognized action for contribution. I am not willing to enhance the new right to this extent, and would affirm the judgment dismissing the third party petition.