**Robert L. SHAW, Plaintiff-Appellant,**

v.

**Dr. Charles A. CLOUGH,
Defendant-Respondent.**

**No. KCD 30493.**

Missouri Court of Appeals,
Western District.

March 3, 1980.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 7, 1980.

Application to Transfer Denied
May 13, 1980.

Austin B. Speers, Kansas City, for plaintiff-appellant.

J. Michael Vaughan, Kansas City, Linde, Thomson, Fairchild, Langworthy & Kohn, Kansas City, of counsel, for defendant-respondent.

Before SHANGLER, P. J., and SWOFFORD and CLARK, JJ.

SWOFFORD, Judge.

This action is for damages for personal injuries arising from a doctor-patient relationship of the parties and based upon claims of medical negligence. The court below sustained the defendant's motion for summary judgment based solely upon a finding that at the time this suit was filed the two-year statute of limitation governing this type of action, § 516.105 R.S.Supp. 1976, had run and that the cause was therefore barred by the statute. The plaintiff timely appealed from this summary judgment. The sole question upon this appeal is the applicability of the two-year statute of limitation bar under the record on summary judgment which consists of the plaintiff's petition, the defendant's answer thereto, the parties' answers to interrogatories, affidavit of the defendant, affidavit of the plaintiff's attorney, two discharge summaries from the records of Bethany Medical Center signed by the defendant, the motion for summary judgment, and the trial court's order sustaining that motion. Summary judgment has long been recognized as an extreme and drastic remedy and great care should be exercised in utilizing the procedure [Rule 74.04(c), 74.04(h)], and in reviewing this record, this Court must do so in the light most favorable to the plaintiff against whom the summary judgment was entered. *E. O. Dorsch Electric Co. v. Plaza Construction Co.*, 413 S.W.2d 167, 169[2]

(Mo.1967); *Smile v. Lawson,* 435 S.W.2d 325, 328[3] (Mo.banc 1968), and cases cited therein.

When the record before this Court is so viewed, the following chronological facts appear:

In November of 1974, the plaintiff sustained an injury to the cervical area. He became a patient of the defendant in January of 1975, and in February, 1975 he was admitted to Bethany Medical Center where the defendant performed a cervical myelogram which revealed cervical spondylitic disease with spur formation at C–5–C–6, C–6–C–7. Plaintiff was readmitted to Bethany on March 12, 1975 and on March 13, 1975 the defendant performed corrective surgery to the affected area.

During the surgery of March 13, 1975 the defendant obtained bone plugs for cervical fusion from the plaintiff's anterior right thigh, during the course of which procedure, it later developed, the lateral femoral cutaneous nerve was entrapped. The plaintiff was discharged from Bethany following this surgery on March 22, 1975 and remained under the care of the defendant as an outpatient. The results of the neck surgery afforded good relief from his difficulties in that area, but he began to experience pain and loss of sensation in the interior right thigh, the donor site of the fusion material during the surgery on March 13, 1975. The plaintiff continued under the defendant's care during the spring and summer of 1975. He testified in his deposition that when the pain developed in his leg the defendant told him "not to worry about it"; that it was part of the recovery process. The plaintiff was readmitted to Bethany on August 25, 1975 for an exploratory surgical procedure at the donor site because the defendant "felt that the (sic) had an entrapment of the lateral femoral cutaneous nerve at the donor site for the bone graft for the neck stabilization". During this surgery, at the donor incision site, "the lateral femoral cutaneous nerve was found to be entrapped with a small neuroma in continuity". The defendant excised the neuroma and "the lateral femoral cutane-ous nerve was then cut at the inguinal ligament". Further, the discharge summary discloses that the plaintiff "is to be followed as an outpatient". Additionally, the defendant's affidavit filed in connection with his motion for summary judgment states:

> "The meralgia paresthetica secondary to entrapment of the lateral femoral cutaneous nerve occurred during the surgical procedure of March 13, 1975."

Plaintiff propounded interrogatories to the defendant, which were answered under oath. One of these, and defendant's answer, appear as part of the Circuit Court file, as follows:

> "14. Please state the exact date upon which you became aware that the lateral femoral cutaneous nerve in plaintiff's right thigh was entrapped.
>
> A. May 5, 1975."

This suit was filed on April 20, 1977 and sets forth the above history of his care and treatment by the defendant; that the nerve entrapment occurred during the neck surgery of March 13, 1975; alleges generally that such care was negligent and lacking in the requisite skill and knowledge; that the damage to and destruction of the nerve in his right leg resulted in permanent injury to and disability of that member; and, various items of resulting loss and damage. No request was made in the court below for a more definite statement or for a bill of particulars. The defendant in his answer generally admitted the doctor-patient relationship and the various surgical procedures, but denied other allegations therein and affirmatively pleaded the bar of the two-year statute of limitation.

■ The question thus presented is whether the two-year limitation statute commenced to run on March 13, 1975, the date on which the cervical surgery was performed, in which event this case was filed over two years after the initial act complained of, or whether the running of this period of limitation was tolled by reason of the continued treatment of the plaintiff

which culminated in the surgery of August 25, 1975, at which time the entrapped nerve was severed, under the exception first declared in Missouri in the case of *Thatcher v. DeTar*, 351 Mo. 603, 173 S.W.2d 760 (1943), in which event the action was filed within the two years and is not barred.

In *Thatcher*, the defendant removed plaintiff's appendix on August 25, 1937, and left a surgical needle in the operation site. The plaintiff continued under the defendant's care until October, 1939, when he sought other medical attention and the presence of the needle was discovered and it was removed. The suit was filed on August 29, 1941, over four years following the surgery, and the trial court dismissed the action as barred by the two-year statute of limitation. On appeal, the Supreme Court reversed and remanded the cause for trial. In so doing, the *Thatcher* court noted decisions from California, Minnesota, New York, Ohio and Wisconsin, as collected in 74 A.L.R., Annotations, p. 1322, and 41 Am. Jur. 233, par. 123, and quoting from the latter, stated:

> "* * * 'Thus, it has been held that the statute does not commence running until treatment by the physician or surgeon has terminated, *where the treatment is continuing and of such nature as to charge the medical man with the duty of continuing care and treatment which is essential to recovery until the relation ceases * * * '*" (Emphasis supplied)

Applying these rules, the *Thatcher* court concluded, l. c. 762:

> "* * * Taking a common sense view of the situation, and one in harmony with justice, the conclusion seems apparent that *the statute of limitations did not begin to run against plaintiff until the treatment by the defendant ceased. * **" (Emphasis supplied)

In further support to this conclusion and placing it in a somewhat broader perspective, the *Thatcher* court quoted with approval from the case of *Schmitt v. Esser*, 178 Minn. 82, 226 N.W. 196, 197, as follows:

> " 'We think the *treatment* and *employment* should be considered as a *whole,*

and, *if there occurred therein malpractice* the statute of limitations begins to run when the treatment ceases.' " (Emphasis supplied)

The *Thatcher* rule was recognized and applied by this Court in *National Credit Associates, Inc. v. Tinker*, 401 S.W.2d 954 (Mo.App.1966) where the court, at l. c. 958–959[3, 4] stated:

> "* * * Our Missouri court rulings, which are in line with the majority view, are that the statute begins to run on the date when the last treatment was completed."

See also: 80 A.L.R.2d 380, Sec. 6[6]; *Myers v. Stevenson*, 125 Cal.App.2d 300, 270 P.2d 885 (1954); McCleary, 9 Mo.Law Review 102; *Thatcher v. DeTar.*

Counsel have not cited, nor has independent research disclosed, any decision of the Supreme Court of Missouri overruling the principles of *Thatcher*, and the exception therein adopted is still viable law controlling on this court.

By its very nature, the tolling exception to the bar of limitation rule rings out with logic, with morality, and with "common sense" as recognized in *Thatcher*. The doctor-patient relationship is in most instances a highly personal and close one, encompassing on the part of the patient a basic confidence and reliance upon the skills and judgment of the doctor with a reasonable expectation that such will be met by a deep sense of obligation and proper exercise by the doctor of his incomparable superior knowledge and the dedicated use of his best talents and judgment. If he is careless or negligent in his treatment of his patient, and his patient suffers injury and damage, he, like all others, whether professional or lay, can be held responsible under civil law for his actions.

A termination of the relationship under the present state of the law in Missouri commences the running of the applicable statute of limitation as a "statute of repose". The rationale of the decisions in *Thatcher* and other jurisdictions adopting this exception are based upon the concept that it stems primarily from the nature of

the relationship and that the obligation and treatment be considered as a "whole" until it ceases and the obligations arising therefrom should not be conceptually fragmented. In the case now before this Court it is apparent that the relationship existed by reason of the traumatic injury to the plaintiff's neck and upper back and that the defendant accepted this physician-patient relationship and its concomitant responsibilities in February, 1975; his undertaking was for that medical difficulty, and as it developed the accompanying, direct and consequential condition of plaintiff's right leg; and the defendant's care and treatment was continuous at least to late August, 1975.[1]

Under the facts appearing on the record before this Court, the conclusion is reached that the tolling rule of *Thatcher* applies and this cause of action was not barred by the two-year statute of limitation.

The defendant seeks to avoid the rule in *Thatcher* upon the basis that in the instant case the leaving of a "foreign object" in the plaintiff's operation site and specific acts of negligence in the continuing treatment after the operation were not alleged, as was the case in *Thatcher.* As to the "foreign object" argument, defendant relies specifically upon the case of *Laughlin v. Forgrave,* 432 S.W.2d 308 (Mo.banc 1968). That case is neither controlling nor persuasive here. It did not involve continuing care and treatment to bring it within the *Thatcher* rule but was decided rather upon a strict ruling in a 4–3 decision that under the then existing statutes the two-year statute of limitation commenced to run following surgery to the plaintiff's back, during which the surgeon left a rubber drain in the site of the operation, which fact was not discovered for 7 or 8 years after the operation, during which time the plaintiff had been under the direct care of several other doctors and not the surgeon at fault. *Laughlin* is not applicable to the case before the Court.

◼ In response to defendant's argument that there was a failure to come within the *Thatcher* exception because the plaintiff failed to charge specifically any acts of negligence against the defendant following the cervical and bone fusion surgery of March 13, 1975, this must be said:

The plaintiff's petition after alleging the chronology of the various medical procedures followed while he was under the care of the defendant for the neck condition from which he was suffering and charging defendant with negligence in general terms concluded that element of his petition with the charge:

> "6. That the defendant was careless and negligent during the surgical procedure *as aforesaid,* directly and proximately causing plaintiff to suffer permanent injury to his right leg in the following respects * * *" (Emphasis supplied)

Obviously, the pleader was viewing the entire history of care, treatment and surgeries as a "whole", as comprehended by the *Thatcher* rule and the principles and authorities upon which it was based, and the pleading absent appropriate motions, further discovery and evidence could not and should not be broken down into more specific allegations. Certainly such open-end pleading at the early stages of litigation should not form the basis for invoking the drastic remedy of summary judgment in the light of *Thatcher.*

Further, this view is confirmed by the fact that on July 12, 1977, in answer to interrogatories propounded to him [No. 27(a)] by the defendant as to the precise manner in which he contended that the defendant was careless and negligent, he answered under oath:

> "By negligent entrapment of lateral femoral cutaneous nerve during surgery on 3–12–75 and *negligent attempted repair on 8–25–1975* resulting in permanent disability to right leg." (Emphasis supplied)

To support his position, the defendant cites the case of *Winchester v. Fenton,* 541 S.W.2d 572 (Mo.App.1976), an opinion from

---

1. The defendant's records as revealed in his Answers to Interrogatories show that his last treatment of plaintiff was, in fact, an office visit on August 25, 197̲6̲.

**217**

the Southern District of this Court. In that case, suit was brought by a wife and husband for burns received by the wife while under the care of the defendant osteopaths on February 9, 1973. No other facts appear in the opinion. Suit was filed more than two years after the burn injury was sustained and the court held that since no negligent treatment by the defendant subsequent to February 9, 1973 was alleged, the *Thatcher* exception was inapplicable. The opinion reveals only the basic facts above noted, and the court's statement that *Thatcher* does not apply does not rise above the status of dictum and certainly does not destroy the rule of exception declared in *Thatcher*, and is not controlling on this Court.

A further position of defendant deserves brief comment. He states that this record presents on its face no genuine issue of material fact for the reason that it discloses "only one possible act of neglect—entrapment of the lateral femoral cutaneous nerve in plaintiff's right leg on March 13, 1975", and that the counteraffidavit of the plaintiff's attorney was incompetent because not based upon the affiant's personal knowledge but rather was based in part upon hearsay. Thus, defendant contends the motion for summary judgment was unanswered. This argument is not persuasive, for several reasons. In the first place, while the allegations of negligence are couched in general terms, it is clear from a reading of the whole petition that those general charges could reasonably be interpreted to reflect the pleader's clear intention to apply them to the entire scope of the period during which the plaintiff was under the professional care of the defendant. That intent is bolstered by the plaintiff's answer to Interrogatory No. 27(a), above quoted, and by the whole record, which clearly indicates possible areas of subsequent carelessness or negligence in the treatment following the cervical surgery. Of course, further discovery and development of evidentiary facts in this area may indicate the advisability or need for amendment of the pleadings under the liberal standards for such amendments. Rule 55.-

33; *Smile v. Lawson*, 435 S.W.2d 325, 329 (Mo.banc 1968), concurring opinion.

The parts of rules governing summary judgment proceedings pertinent in the instant case are as follows:

Rule 74.04 Summary Judgment.

\*　　\*　　\*　　\*　　\*　　\*

"(c) Motion and Proceeding Thereon.

\* \* \* The adverse party prior to the day of hearing *may* serve opposing affidavits. \* \* \*

\*　　\*　　\*　　\*　　\*　　\*

(e) Form of Affidavits—Further Testimony—Defense Required

\*　　\*　　\*　　\*　　\*　　\*

\* \* \* When a motion for summary judgment is made and supported as provided in the Rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, *if appropriate*, shall be entered against him.

\*　　\*　　\*　　\*　　\*　　\*

(h) When not rendered.

In *no case shall a summary judgment be rendered* on issue triable by jury or the court without a jury *unless the prevailing party is shown by unassailable proof to be entitled thereto as a matter of law.* \* \*"
(Emphasis supplied throughout)

The law is firmly established in this state that this Rule places the burden of proof upon the party seeking summary judgment to establish his right thereto "by unassailable proof". *Brooks v. Consey*, 427 S.W.2d 498, 500[2] (Mo.1968); *Allen v. St. Luke's Hospital of Kansas City*, 532 S.W.2d 505, 507[1–3] (Mo.App.1975). The movant defendant here has failed to meet that burden. His motion for Summary Judgment states as the sole ground therefor the bar of

the two-year statute of limitations and his affidavit in support thereof contains only a bare account that he performed the myelogram in February of 1975, the surgical correction of the cervical condition on March 13, 1975, and that the entrapment of the nerve occurred at that time. Nothing is contained in his affidavit as to the continuance of the treatment and of the continuing relationship of physician-patient after March 13, 1975. The facts of continuing care and treatment that call into play the exception and tolling rule of *Thatcher v. DeTar* appear in the counteraffidavit of the plaintiff's counsel, the Discharge Summaries of Bethany Hospital signed by the Defendant, and the answers to interrogatories of both parties. Thus, the trial court (and this Court) must go beyond the motion for summary judgment and the defendant's supporting affidavit to make the basic determination of whether under this present record the drastic remedy of summary judgment is appropriate and whether the record supports the conclusion that the defendant has shown by unassailable proof that he is entitled to such judgment as a matter of law. The obligation of the court is thus stated in the case of *Cure v. City of Jefferson,* 380 S.W.2d 305, 310[1] (Mo.1964):

l. c. 310[1, 2]:

" * * * Rule 74.04 does not 'require the grant of summary judgment in a case where such judgment is not proper even though the facts be taken as in the moving party's affidavit. The court may deny the motion if for any reason summary judgment may *be inappropriate,* even though the opposite party has not submitted an affidavit.'" (Emphasis supplied)

See also: *E. O. Dorsch Electric Co. v. Plaza Construction Co., Inc.,* 413 S.W.2d 167, 169–170[4, 5] (Mo.1967).

The defendant's position that the counteraffidavit of plaintiff's counsel is ineffective because it is obviously based upon hearsay and leaves the defendant's motion and affidavit unchallenged is without merit on this record. The affiant states the affidavit is made based upon his personal knowledge and for the present purposes that sworn statement should be accepted; the truth of the facts contained therein were not challenged by the defendant; and, those facts were fully supported by the record outside the affidavit. This complaint is purely technical and not controlling.

The conclusion is reached that there remain issuable facts for determination; that the rule in *Thatcher v. DeTar* is applicable; that the defendant has not borne the burden placed upon him to warrant a summary judgment; and, that the trial court erred in so doing.

The judgment is therefore reversed and the case remanded for trial.

All concur.