**Kevin Luke SMITH; Constance Smith, Plaintiffs–Appellants,**

v.

**PASLODE CORPORATION; Signode Corporation; Signode Supply Corporation; Illinois Tool Works, Defendants.**

**PASLODE CORPORATION; Illinois Tool Works, Third Party–Plaintiff,**

v.

**ST. LUKE'S EPISCOPAL PRESBYTERIAN HOSP., Third Party–Defendant,**

**American Red Cross, Third Party– Defendant–Appellee.**

No. 92–3389.

United States Court of Appeals, Eighth Circuit.

Submitted April 15, 1993.

Decided Oct. 7, 1993.

Steven L. Groves, St. Louis, MO, argued, for plaintiffs-appellants.

David P. Gersch, Washington, DC, argued, for appellee.

Before FAGG and MAGILL, Circuit Judges, and STUART,* District Judge.

FAGG, Circuit Judge.

Kevin Luke Smith and Constance Smith appeal from the district court's order granting the American Red Cross's motion for summary judgment on the ground that the Smiths' negligence claims against the Red Cross are time-barred. *Smith v. Paslode Corp.*, 799 F.Supp. 960, 965–68 (E.D.Mo. 1992). The Smiths appeal. We affirm in part and reverse in part.

Kevin Smith was injured by a nail gun in November 1983. As a result of the injury, Kevin underwent surgeries in November 1983 and August 1984. During the surger-

ies, Kevin, who suffers from a mild form of hemophilia, was infused with cryoprecipitate, a blood component that aids clotting, supplied by the Red Cross. Kevin married Constance in March 1987. On August 31, 1987, three years after his last transfusion, Kevin learned he tested positive for the human immunodeficiency virus (HIV), the virus that causes acquired immunodeficiency syndrome (AIDS). Neither Kevin nor Constance knew or suspected Kevin had been infected with HIV before that date.

In August 1989, within two years after Kevin learned he was infected with HIV, but nearly five years after his last transfusion, Kevin and Constance filed this action against the Red Cross raising several negligence claims. The district court concluded the Smiths' negligence claims are time-barred by the Missouri statute of limitations that generally provides: "All actions against physicians, hospitals, ... and any other entity providing health care services ... for damages for malpractice, negligence, error or mistake related to health care shall be brought within two years from the date of [the alleged act of neglect]...." Mo.Stat. Ann. § 516.105 (Vernon Supp.1993).

The Smiths first contend section 516.-105 does not apply because the Red Cross is not an "entity providing health care services." We disagree. The Red Cross is an entity, and under Missouri law, the procurement, processing, distribution, or use of whole blood, plasma, blood products, and blood derivatives for transfusion into the human body is a service, Mo.Stat.Ann. § 431.-069 (Vernon 1992). The district court found the undisputed evidence showed the Red Cross uses medical expertise in collecting, processing, and distributing blood. 799 F.Supp. at 966. We agree with the district court that the Red Cross is an entity that provides health care services.

The Smiths urge us to follow the reasoning of *Kaiser v. Memorial Blood Ctr.*, 486 N.W.2d 762 (Minn.1992), in which the Minnesota Supreme Court held the Red Cross is not a "health care professional" subject to

* The HONORABLE WILLIAM C. STUART, Senior United States District Judge for the Southern      District of Iowa, sitting by designation.

Minnesota's medical malpractice statute of limitations. The Minnesota statute, however, contains a narrow statutory definition of health care professionals, which does not include nonnatural persons. *Id.* at 766. In contrast, the Missouri statute broadly covers any entity providing health care services, with no further applicable definition of the term.

Other Missouri statutes support our view that the Red Cross provides health care services. After the Missouri legislature enacted section 516.105, it enacted statutes that limit noneconomic damages in tort actions for improper health care. Mo.Stat.Ann. §§ 538.-205–.230 (Vernon 1988). For the purpose of chapter 538, "health care services" are defined as including "transfer to a patient of goods or services ... in furtherance of the purposes for which an institutional health care provider is organized." *Id.* § 538.-205(5). "Health care provider" is defined as "any ... entity that provides health care services under the authority of a license or certificate." *Id.* § 538.205(4). The Red Cross collects and transfers blood in furtherance of its institutional purpose, and the undisputed evidence shows the Red Cross performs blood banking under a Food and Drug Administration license. Thus, it appears that under chapter 538, the Red Cross would be a health care provider that provides health care services.

The Smiths also assert that because blood banks lack a patient-provider relationship like physicians, hospitals, and the other health care providers specifically named in section 516.105, we should construe the statute's later general terms, "any other entity providing health care services," as not applying to blood banks. This rule of statutory construction, known as *ejusdem generis,* does not apply in this case because the general terms of section 516.105 are clear. *United States v. Clark,* 646 F.2d 1259, 1265 n. 12 (8th Cir.1981); *Mashak v. Poelker,* 367 S.W.2d 625, 630 (Mo.1963) (en banc).

The Smiths next argue section 516.105 does not apply because their action is not "for damages for ... negligence ... related to health care." Section 516.105 confines application of the two-year limitations period to only the specified class of lawsuits brought against health care providers. *Rowland v. Skaggs Cos.,* 666 S.W.2d 770, 772 (Mo.1984) (en banc). In rejecting a claim that the statute applies to actions for contribution, the Missouri Supreme Court stated the statute encompasses actions in which "the consumer of health services seeks damages for injuries resulting from some improper, wrongful or careless acts or omissions on the part of a health care provider in the delivery of health care to the consumer." *Id.* at 772–73.

█ Kevin alleged the Red Cross was negligent in failing to implement a surrogate test to screen high risk blood and in failing to use a more aggressive, confrontational interview to screen high risk donors. Kevin asserts these claims are for negligence in performing ministerial and administrative functions rather than for negligence related to his health care. The Red Cross's decisions not to use a surrogate test to screen blood and not to screen donors more aggressively, however, were made and implemented by physicians, nurses, and other health care professionals exercising professional judgments. Further, a physician or someone acting under a physician's supervision must determine the suitability of a donor on the day the blood is collected. 21 C.F.R. § 640.3(a) (1984). We thus conclude Kevin's claims that the Red Cross negligently failed to use a surrogate test and to screen the donors more aggressively are related to health care.

█ The Smiths next contend the two-year statute of limitations in section 516.105 did not begin to run until Kevin discovered he had AIDS in August 1987 because the statute's discovery rule for foreign objects applies. Section 516.105 provides an exception to the general two-year statute of limitations for "cases in which the act of neglect complained of [is] introducing and negligently permitting any foreign object to remain within the body of a living person." This exception, however, does not apply when the plaintiff does not allege the defendant negligently allowed a foreign object to remain in the plaintiff's body. *See Hershley v. Brown,* 655 S.W.2d 671, 675–76 (Mo.Ct.App.1983) (foreign object exception inapplicable to claim of negligent performance of medical

procedure because no allegation that medical device was negligently permitted to remain inside plaintiff's body). Thus, although HIV was foreign to Kevin's body before his transfusions in 1983 and 1984, the exception does not apply because Kevin did not allege the Red Cross negligently permitted HIV to remain in his body. Indeed, the Red Cross could not negligently permit HIV to remain in Kevin's body because once a person becomes infected with HIV, the virus cannot be removed. We conclude the statute's plain terms preclude application of the foreign object exception in this case.

Finally, Constance contends the district court overlooked her independent negligence claim against the Red Cross and mistakenly dismissed it with her consortium claim. We agree. In addition to her consortium claim, Constance asserted an independent claim that the Red Cross negligently withheld information about Kevin receiving an HIV-tainted blood transfusion, which allegedly caused her own exposure to HIV, inability to have children in her marriage, and emotional and mental anxiety. Constance's theory is basically that if the Red Cross had properly conducted its look-back procedure, Kevin would have learned of his possible infection earlier and Constance, who married Kevin in 1987, could have avoided or taken precautions to reduce her exposure to HIV. Kevin also asserted his own claim that the Red Cross was negligent in failing earlier to discover and report that the blood he received was infected with HIV.

As the Smiths explain in their brief, these are claims that the Red Cross negligently conducted its "look-back" procedure, which the Red Cross instituted nationwide when it started screening donors' blood for HIV in March 1985. If a donor tested positive, then the Red Cross would determine whether the donor had made earlier donations, and if so, the Red Cross tracked the blood's distribution and notified the recipient. The record in this case shows one of the donors of the blood Kevin received had tested positive for HIV in April and June 1985, but the Red Cross did not inform Kevin of this fact until 1990 after the Smiths filed this lawsuit. (It is unclear whether the Red Cross tested the positive donor or when the Red Cross learned of the donor's positive status.)

The district court identified the Smiths' claim that the Red Cross "was negligent in failing to follow up the blood samples and donors to determine if any were infected with HIV and, if so, to relay this information to the recipient of the blood," 799 F.Supp. at 965, and ultimately ordered dismissal of the counts containing both look-back claims, *id.* at 967. The district court, however, neither discussed the look-back claims nor decided whether they are "for damages for … negligence … related to health care" within the meaning of section 516.105. *See id.* at 966–67.

Kevin does not pursue his look-back claim's dismissal on appeal, perhaps because in his situation, causation would be a formidable evidentiary barrier. Rather, Kevin's statements about the look-back claim are made in the context of bolstering Constance's claim. Thus, we do not consider the district court's grant of summary judgment on Kevin's look-back claim. Because the district court did not consider Constance's negligent look-back claim, however, we conclude the district court's grant of summary judgment on Constance's claim should be remanded. On remand, the district court will need to decide which statute of limitations applies to Constance's claim and when the claim accrued. The statute of limitations question may turn on whether the claim is one for "negligence … related to health care" within the meaning of section 516.105.

Although the last sentence of Constance's argument about her negligence claim suggests for the first time that "the district court erred in dismissing [her] claim for … loss of consortium," she neither advances any argument nor cites any authority in support of the conclusory statement. Thus, we do not consider the issue. *See J.E.K. Indus., Inc. v. Shoemaker,* 763 F.2d 348, 351 (8th Cir.1985). We note, however, that the reason given by the district court for dismissing Constance's consortium claim would not apply to her look-back claim. *See Maddox v. Truman Med. Ctr., Inc.,* 727 S.W.2d 152, 154–55 (Mo.Ct.App.1987).

**120**

Accordingly, we affirm the district court's order granting summary judgment to the Red Cross on all of Kevin's claims and on Constance's consortium claim, but reverse the portion granting summary judgment on Constance's look-back claim and remand it for further proceedings.