886 F.Supp. 1494 (1995)
Constance L. SMITH, Plaintiff,
v.
AMERICAN RED CROSS, Defendants.
No. 88CV2247 JCH.
United States District Court, E.D. Missouri, Eastern Division.
March 27, 1995.
*1495 Steven L. Groves, Schlichter and Bogard, St. Louis, MO, for Kevin L. Smith.
Jerome J. Schlichter, Schlichter and Bogard, St. Louis, MO, for Constance Smith.
Frank N. Gundlach, Armstrong and Teasdale, St. Louis, MO, for Paslode Corp.
Frank N. Gundlach, Mary C. Kickham, Armstrong and Teasdale, St. Louis, MO, for American Red Cross.

MEMORANDUM AND ORDER
HAMILTON, Chief Judge.
This matter is before the Court on remand from the United States Court of Appeals for the Eighth Circuit. Plaintiff Constance Smith and her husband, Kevin Smith, originally filed suit against the American Red Cross (hereinafter "Red Cross") alleging that Mr. Smith was negligently infected with the human immunodeficiency virus ("HIV") as a result of a transfusion of blood collected by Red Cross. In Smith v. Paslode Corp., 799 *1496 F.Supp. 960 (E.D.Mo.1992), this Court granted summary judgment in favor of Defendant Red Cross finding Plaintiffs' claims barred by Missouri's two-year statute of limitations for claims against health care providers. R.S.Mo. § 516.105. Plaintiffs appealed that decision to the Eighth Circuit.
On October 7, 1993, the Eighth Circuit entered an opinion affirming the order granting summary judgment in favor of Red Cross on Plaintiff Mr. Smith's claims and reversed the portion of that order granting summary judgment on Mrs. Smith's lookback claims and remanded for further proceedings. Smith v. Paslode Corp., 7 F.3d 116, 119 (8th Cir.1993). In remanding the case, the Court of Appeals stated that this Court will need to determine "which statute of limitations applies to [Mrs. Smith's] claim and when the claim accrued." Id. In addition, the court stated that the statute of limitations issue "may turn on whether [Mrs. Smith's] lookback claim is one for `negligence ... related to health care,'" and, therefore, barred by the two-year statute of limitations, Mo.Stat. Ann. § 516.105, on claims against health care providers. Id. Accordingly, Defendant Red Cross filed a motion for summary judgment with respect to Mrs. Smith's lookback claim. That motion is presently before the Court. Plaintiff has filed a response thereto and a request for a hearing. Both parties filed supplemental briefing in accordance with the Court's March 7, 1995 Order.

I. Factual Background
In 1983, Mr. and Mrs. Smith began dating. (Pltf's Exh. 2 at 12). They were married on March 7, 1987. Id. Prior to their marriage, on November 28, 1983, Mr. Smith was injured when a pneumatic nail gun shot a nail through his left hand. As a result of that injury, Mr. Smith underwent surgery and received blood transfusions in December of 1983 and September of 1984. In August or September of 1987, Mr. Smith tested positive for HIV antibodies. Mr. Smith is presumed to have been infected by the donor of Unit No. 11509538, collected on September 2, 1983. (hereinafter "the implicated donor")
In the spring of 1985, the Food and Drug Administration ("FDA") licensed and developed the first blood screening test to detect the "etiologic agent or defect in blood that causes AIDS, HIV." (Deft's Exh. 3 at ¶ 17; Exh. 4 at ¶ 14). In the 1980's Red Cross and Scott Air Force Base (hereinafter "SAFB") occasionally conducted joint mobile blood collections. On such occasions, SAFB retained some of the donations collected and distributed them under its military blood program. Red Cross took the other units of blood and distributed such units. (Deft's Exh. 2 at 16-22).
SAFB processed, tested and distributed the implicated donor's most recent donations which were collected on October 5, 1984, December 7, 1984, February 1, 1985, April 5, 1985, June 7, 1985, and February 7, 1986. (Deft's Exh. 2 at 16-22; Exh. 6). SAFB destroyed the latter three donations which tested positive for HIV antibodies. (Deft's Exh. 2 at 19, 30-31; Exh. 6)
In 1985 and 1986, the medical community was concerned with "the evolving medical knowledge regarding the implication of HTLV III antibody positivity, the potential for evoking unnecessary anxiety in the vast majority of unaffected recipients resulting from lookback, the need to maintain recipient and donor confidentiality and the need to protect uninfected parties from infection by infected recipients." (Deft's Exh. 1 at ¶ 7).
On June 7, 1985, the American Association of Blood Banks, the Red Cross, and the Council of Community Blood Centers issued a Joint Statement on Tests for HTLV III (now HIV) Antibodies. (Defts' Exh. 7) The Joint Statement indicated that
[s]tudies are underway to evaluate the health status of recipients transfused with components from donations that were subsequently determined to contain HTLV III antibodies. Because we do not know what these studies will show, and because we do not know whether an individual with HTLV III antibodies at a current donation has such antibodies previously, an adequate basis for notification of recipients of blood components from a previous donation does not exist. The injury to prior recipients which may be caused by such notification is disproportionate to the benefits, which are tenuous and ill-defined. As *1497 information about the natural history and relative risk of antibody-positive state develops, modified recommendations will be forthcoming.
(Defts' Exh. 7 at pg. 4). Blood collectors did not implement lookback programs in 1985 in view of the uncertainty of medical evidence regarding the significance of testing positive for HTLV III antibodies. (Deft's Exh. 1 at ¶ 8).
On June 16, 1986, the above-mentioned blood collectors issued a revised joint statement recommending the implementation of lookback programs. (Deft's Exh. 8). Thereafter, Red Cross and other blood collectors implemented lookback "to investigate the HIV status of recipients of blood components from donors who subsequently tested positive for HIV (then HTLV III) antibodies." (Deft's Exh. 1 at ¶ 9).
The Red Cross' FDA-approved procedures involve a stepwise method for conducting lookback "starting with the investigation of any recipients, from the most recently donated unit, followed by the next most recent unit and so on, until all available recipients from a donation tested negative." (Deft's Exh. 1 at ¶ 12). The procedure provides that "[i]f all tested recipients from the most recent previous donation are nonreactive by EIA for HTLV III antibodies, the lookback procedure may be ended." (Deft's Exh. 1 at ¶ 12). Similarly, pursuant to the procedure "[i]f the recipient of only one component from a donation is available for testing and is found to be nonreactive, lookback to earlier donations is not required." Id.
In 1986, SAFB initiated lookback on the recipients of blood components from the implicated donor. (Deft's Exh. 2 at 19, 25-36). On October 31, 1986 SAFB informed the Red Cross that lookback would be conducted at SAFB because the implicated donor's six most recent donations were collected, tested and distributed, or destroyed by SAFB. (Deft's Exh. 6 and Exh. 1 at ¶ 15).
As a result of SAFB's lookback procedure, SAFB learned that the available recipients of the implicated donor's two most recent, transfused donations tested negative for HIV antibodies. (Deft's Exh. 2 at 31; Exh. 6). At that point, SAFB ceased the lookback procedure. (Deft's Exh. 1 at ¶¶ 12, 16).
On August 29, 1989, Plaintiff filed suit against Red Cross.

II. Legal Standard
Red Cross moves for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. Red Cross argues that it is entitled to summary judgment on Mrs. Smith's lookback claim because (1) Red Cross did not act negligently in conducting lookback in the instant case; (2) Plaintiff's claim is barred by Missouri's two-year statute of limitations for claims against health care providers; (3) Red Cross' conduct is governed by a professional standard of care and Plaintiff has failed to identify any expert qualified to testify to that standard; and (4) Plaintiff has suffered no cognizable injury attributable to any delay in conducting lookback.
In response, Plaintiff argues that even if Red Cross followed industry custom in conducting its lookback procedure, it acted negligently. Plaintiff also argues that the two-year statute of limitations is not applicable to her claim because Defendant's actions in conducting lookback were ministerial in nature and did not involve health care considerations. Similarly, Plaintiff argues that an ordinary negligence standard of care applies and that even if the professional standard applies, Plaintiff has produced qualified experts who have testified that Defendant breached the applicable standard of care. Finally, Plaintiff argues that she has suffered a cognizable injury as a result of Defendant's actions.
A Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that *1498 might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.
A moving party always bears the burden of informing the Court of the basis of its motion. Celotex, 477 U.S. at 323, 106 S.Ct. at 2552. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed.R.Civ.P. 56(e); Anderson, 477 U.S. at 247, 106 S.Ct. at 2509. The nonmoving party may not rest upon mere allegations or denials of his pleading. Anderson, 477 U.S. at 256, 106 S.Ct. at 2514.
In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in her favor. Id. at 255, 106 S.Ct. at 2513. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. Id. at 249, 106 S.Ct. at 2510.

III. Analysis

A. Statute of Limitations
As a threshold matter, the Court must determine whether Missouri's two-year statute of limitations applies to Plaintiff's claim that Red Cross was negligent in conducting its lookback procedure. To make that determination, the Court must decide whether Red Cross is a health care professional when it engages in lookback. Missouri law provides that

All actions against physicians, hospitals, dentists, registered or licensed practical nurses, ... and any other entity providing health care services and all employees of any of the foregoing acting in the course and scope of their employment, for damages for malpractice, negligence, error or mistake related to health care shall be brought within two years from the date of occurrence of the act of neglect complained of....
Mo.Ann.Stat. § 516.105 (Vernon Supp.1994) (emphasis added). This Court has previously held that Red Cross is a health care professional when it procures, processes, distributes and uses blood products because Red Cross "utilizes extensive medical expertise in providing [these services]." Smith v. Paslode, 799 F.Supp. 960, 966 (E.D.Mo.1992). In so holding, this Court followed the view of many jurisdictions that blood banks are considered health care professionals. Id. (citations omitted). At this juncture, the Court must determine whether Red Cross also uses "extensive medical expertise," and therefore qualifies as a health care professional, when it conducts its lookback procedure.
The Eighth Circuit has held that Red Cross is an entity within Mo.Stat.Ann. § 516.105. Smith v. Paslode, 7 F.3d 116 (8th Cir.1993). In addition, the evidence before the Court indicates that the Red Cross is a health care professional at every stage in the lookback procedure from the decision to implement such a procedure to the determination of when it is appropriate to suspend such procedure. Therefore, the two-year statute of limitations applies to Mrs. Smith's lookback claim.
Decisions regarding the implementation of a lookback procedure in 1985 and 1986, focused on several factors including (1) the uncertainty of the medical evidence related to the significance of testing positive for HTLV III antibodies; (2) the possibility of causing unnecessary anxiety in uninfected recipients; (3) the necessity of maintaining donor and recipient confidentiality; and (4) the necessity of protecting uninfected third parties from infection by infected recipients. (Deft's Exh. 1 at ¶ 7). Such issues confronted the medical community and were the subject of debate in medical literature at the time. Id. In view of the uncertainty of these medical issues, no blood collector initiated lookback for HTLV III until 1986. Id. at ¶ 8.
Plaintiff argues that Red Cross did not implement lookback procedures until 1986 because "it did not want the unwashed masses to know of the danger lurking in the *1499 blood they had received." (Pltf. Opp. at 7). However, the record indicates that the decision regarding the implementation of lookback was based on the need to inform individuals who may have been exposed to HIV through a blood transfusion while avoiding unnecessarily alarming the recipients who were not exposed in such a manner. (Deft's Exhs. 7, 8 and 1) The decision to implement lookback procedures in 1986 as opposed to an earlier date relates to health care in that such decision was based on the medical knowledge regarding HTLV III antibodies that was available to Defendant at that time. Medical knowledge regarding HTLV III antibodies and the significance of testing positive for such antibodies provided the backdrop for the determination of whether to implement lookback procedures. Against that backdrop, Red Cross used medical expertise to determine when and how to conduct lookback to detect HTLV III antibodies.
Similarly, Red Cross' execution of its lookback procedure relates to health care. Similar to the donation of blood, medical personnel supervise Red Cross' lookback procedure. (Deft's Exh. 1 at ¶ 10). Under that procedure, when a donor tests positive for HIV antibodies Red Cross commences its stepwise process to determine if recipients of that donor's prior donations may have been exposed to HIV. (Deft's Exh. at ¶ 10). Red Cross then requests that the donor provide a history of prior donations. Id. Next, Red Cross traces the donor's units to determine the hospital to which the donation was sent. Id. Red Cross then informs either the hospital's transfusion department or the state or local public health department that the recipients of specific units may have been exposed to HIV. Id. The recipients' doctors are then notified of the possible exposure and determine whether to inform their patients. (Deft's Exh. 1 at ¶ 11). As part of the lookback process, Red Cross provides free HIV testing to potentially affected recipients. Id. To conduct such tests, blood is drawn by phlebotomy, a medical procedure similar to that utilized in blood collection. The blood samples are then tested for HIV antibodies and the patient's physician or the transfusion department is notified of the test results. Id.
The lookback procedure also includes an analysis of the significance of a negative donation by the donor as well as situations in which, based on medical evidence regarding HIV, it is reasonable to cease the lookback procedure. (Deft's Exh. 1 at ¶ 12).
Based on the record, the Court finds that Red Cross' lookback procedure involves medical expertise and judgment at every stage including the determination of when to initiate such procedure, the formulation of the procedure, and the execution of same. The lookback procedure is supervised by medical personnel. The decisions involved at each step in the lookback process are based on medical knowledge regarding HIV antibodies and involve analysis of such information as it pertains to particular donors, recipients, and the public at large. Moreover, as part of the lookback procedure, Red Cross provides free HIV testing where blood is drawn by phlebotomy, a medical procedure similar to that used in blood collection. Conducting lookback is not a ministerial function as Plaintiff argues. Rather, it is a process requiring medical expertise and judgment at every step. Therefore, the Court finds that the lookback procedure relates to health care for purposes of § 516.105.
Plaintiff also argues that § 516.105 is inapplicable to her lookback claim because she is not a consumer of health care services. In support of this argument, Plaintiff cites Rowland v. Skaggs Companies, Inc., 666 S.W.2d 770, 772-73 (Mo.1984) (en banc), where the Missouri Supreme Court stated that:
Giving the words of the statute their plain and ordinary meaning, we believe Sec. 516.105 encompasses those actions where the consumer of health services seeks damages for injuries resulting from some improper, wrongful or careless acts or omissions on the part of a health care provider in the delivery of health care to the consumer.

The statute has also been interpreted to govern in cases where its terms comprehend the substance of the health care consumer's claim.
Id. (emphasis added). Plaintiff also points out that the Missouri Court of Appeals in Arbuthnot v. DePaul Health Center, 891 *1500 S.W.2d 564, 565 (Mo.Ct.App.1995) cited the above-quoted language from Rowland. Plaintiff focuses on the Rowland and Arbuthnot courts' use of the word consumer and argues that the limitations period provided in § 516.105 is inapplicable to non-consumers such as Plaintiff.
Review of Rowland and Arbuthnot reveals that the usage of the term consumer in describing the scope of § 516.105 was not meant to limit that section's applicability to consumer's of health related services. Rather, the courts in Rowland and Arbuthnot assumed that the Plaintiff bringing an action within the scope of § 516.105 would generally be a consumer of health services. In Rowland, the Court determined that § 561.105 did not bar a claim for contribution because such claim was independent from the underlying malpractice claim and was "not related to the types of actions enumerated in § 516.105." 666 S.W.2d at 773. The Court's determination that § 516.105 did not apply to contribution claims did not turn on whether the party seeking contribution was a consumer of health care services as Plaintiff claims. Rather, the Court's decision was based on the type of suits enumerated in § 516.105 which are "claims for damages for malpractice, negligence, error or mistake related to health care." Mo.Stat.Ann. § 516.105. Here, Plaintiff's claim is based on Defendant's negligence in conducting lookback, a procedure that this Court has already determined relates to health care. Thus, Plaintiff's claim is one of the enumerated types of claims governed by § 516.105.
In Arbuthnot, the Court found that § 516.105 barred the Plaintiff's claim because, unlike the contribution claim in Rowland, Plaintiff's claim was "directly related to malpractice." 891 S.W.2d at 566. Again, the Court's decision did not turn on whether the plaintiff was a consumer of health services. Contrary to Plaintiff's argument, neither Rowland nor Arbuthnot stand for the proposition that § 516.105 applies only to claims brought by consumers of health services. Rather, Rowland and Arbuthnot indicate that § 516.105 applies only to the type of claims enumerated therein which this Court discussed in the above analysis of Rowland.
Plaintiff Mrs. Smith also relies on Gramlich v. Travelers Ins. Co., 640 S.W.2d 180 (Mo.Ct.App.1982) for the proposition that § 516.105 does not govern her claim even if it operated to bar her spouse's claim. In Gramlich, the court held that decedent's malpractice claim was barred by the two-year limitations period in § 516.105. However, the court found that § 516.105 did not apply to the wrongful death claim of decedent's beneficiaries because a separate statute created the beneficiaries' wrongful death claim and the statute of limitations contained therein was substantive. Id. at 186.
The Court in Gramlich considered the claims of the decedent and the claims of the decedent's beneficiaries separately. Similarly, this Court is considering Plaintiff's lookback claim independently from her spouse's claim. Unlike Gramlich, where the legislature had enacted a specific statute giving rise to the beneficiaries' wrongful death claim, the legislature has enacted no such statute governing lookback claims. Thus, Gramlich is distinguishable from the case at bar and does not require a finding that § 516.105 is inapplicable to Plaintiff's lookback claim.
If the Court were to assume that § 516.105 only applies to claims brought by consumers of health care services, as Plaintiff argues, the Court would find that Plaintiff was a consumer of the lookback procedures conducted by SAFB and Red Cross. The consumer of a specific medical procedure, such as blood transfusion, is more obvious than the consumer of a health care related service such as the lookback procedure. As Plaintiff argues, Mr. Smith was the only consumer of the blood transfusion through which he received the infected units of blood. However, Mr. Smith was not the only consumer of the lookback procedure. The lookback procedure is conducted not only on behalf of recipients of donated units of blood, but on behalf of the public at large, including blood donors and individuals who have intimate contact with recipients of donated blood. Red Cross and other blood collectors conduct lookback, in part, to prevent the spread of diseases that are carried by blood. Although Plaintiff Mrs. Smith was not a blood donor or a recipient of donated blood, she was a consumer *1501 of the lookback procedure in that she was an individual who had intimate contact with the recipient of donated blood. The Court need not decide how far to extend the concept of a consumer for purposes of the lookback procedure. However, the Court would find that Plaintiff Mrs. Smith was a consumer of the lookback procedure if § 516.105 required such a finding. Determining whether Mrs. Smith was a consumer of the lookback procedure is not necessary for the Court's determination that § 516.105 governs Plaintiff's lookback claims, because application of that section does not turn on whether the plaintiff is a consumer of health services.

B. Accrual of Plaintiff's Claim
Pursuant to § 516.105, all actions related to health care against any entity providing health care services must be commenced within two years of the "act of neglect complained of...." Mo.Stat.Ann. § 516.105. The act of neglect of which Plaintiff complains is either (1) the Red Cross' failure to commence lookback in 1985 when the implicated donor first tested positive for HIV antibodies; or (2) the Red Cross' entrustment of the lookback procedure to SAFB on October 31, 1986. Thus, October 31, 1986 is the latest date on which the wrong forming the basis of Plaintiff's cause of action occurred. Plaintiff's statement that Red Cross "simply sat by" while SAFB conducted lookback and her description of Red Cross's decision to entrust lookback to SAFB as "Stalinistic" and "paternalistic," point to October 31, 1986 as the date on which the act of neglect occurred. (Pltf's Objection at pgs. 3, 7). Over two years later, on August 29, 1989, Plaintiff filed suit against Red Cross based on its alleged neglect in conducting the lookback procedure. Thus, under the Missouri statute of limitations for claims against health care providers, Mo.Stat.Ann. § 516.105, Mrs. Smith's lookback claims are time-barred.

C. Continuing Negligence and Fraudulent Concealment
Plaintiff argues that even if Missouri's two-year statute of limitations applies, Plaintiff's lookback claim is not barred as it involves continuing negligence and fraud. Plaintiff relies on Turner v. Bowen, 862 F.2d 708 (8th Cir.1988) for the proposition that the statute of limitations does not begin to run when a health care provider's action involves fraud or continuing negligence. Based on that principle, Plaintiff argues that because Red Cross did not conduct lookback until 1990, the statute of limitations did not run until Plaintiff learned that her husband tested positive for HIV in September of 1987. Plaintiff filed her complaint in August of 1989, therefore, Plaintiff argues that her complaint was timely filed.
The Court does not find Plaintiff's argument convincing. The Turner opinion upon which Plaintiff relies, is not controlling in the instant case and does not stand for the proposition which Plaintiff claims. Turner is an Eighth Circuit decision reviewing an Arkansas District Court's decision declining to toll the statute of limitations in a case for social security disability benefits. Turner, 862 F.2d at 710. Moreover, to show fraud under Missouri law, a Plaintiff must establish that the defendant acted with the intent to deceive. Kawin v. Chrysler Corp., 636 S.W.2d 40, 43 (Mo.1982) (en banc). Under Missouri law, "`[i]t is well established ... that there must be scienter, either actual or constructive, to support an action at law for fraud or deceit.'" Id. at 43 (quoting Dudley v. Dumont, 526 S.W.2d 839, 847 (Mo.App. 1975)). Scienter implies guilty knowledge or lack thereof on the part of the tortfeasor. Id. Similarly, under Missouri law, "[f]raud imputes venality and corruption to the person charged with it, and both reason and law require clear and convincing proof of it." Gibson v. Smith, 422 S.W.2d 321, 328 (Mo. 1968).
The record in the instant case does not support a charge of fraud. SAFB performed lookback on the implicated donor. Red Cross, in reliance on that lookback, had no reason to believe that Plaintiff's spouse has been exposed to HIV. There is no evidence that Red Cross acted with the intent to deceive Plaintiff. Red Cross followed the procedure prescribed by the medical knowledge at the time. In fact, Plaintiff admits that *1502 Red Cross complied with the custom and practice in place at that time and Plaintiff's expert, Dr. Silverman, acknowledges that Red Cross acted reasonably. (Deft's Exh. 9 at 103-104). On the record, the Court finds no evidence of fraud.
Plaintiff also argues that the statute of limitations set forth in § 516.105 was tolled until 1990 due to Red Cross' continuing negligence in failing to conduct lookback. The Court does not find Plaintiff's continuing negligence argument convincing. In support of that argument, Plaintiff cites Cress v. Mayer, 626 S.W.2d 430 (Mo.Ct.App.1981) and Shaw v. Clough, 597 S.W.2d 212, 214-16 (Mo. Ct.App.1980).
In Cress, Plaintiff sued his physician for failing to obtain informed consent for a surgical procedure. The Court held that § 516.105 did not bar Plaintiff's action because "[t]he date of consent was within the two-year time period, and the `act of neglect' in failing to inform continued to at least the date of consent." Cress, 626 S.W.2d at 435.
In the instant case, Plaintiff claims that Cress provides that the statute of limitations was "tolled until the patient was given the pertinent information." (Pltf's Supp.Opp. at pg. 8). Therefore, Plaintiff argues, the statute of limitations was tolled as to her lookback claim until Red Cross conducted lookback and informed Mr. Smith of the infected donor. Cress, as noted above, does not stand for the proposition for which Plaintiff claims it stands. The Cress court held only that the "act of neglect," the physician's failure to inform the Plaintiff, continued to the date of consent, not until Plaintiff received "the pertinent information." Cress, 626 S.W.2d at 435. Cress is not analogous to the instant case and does not support Plaintiff's claim of continuing negligence.
Plaintiff also relies on Shaw to support her claim of continuing negligence. However, Shaw is distinguishable from the present case. Shaw v. Clough, 597 S.W.2d 212, 214-16 (Mo.Ct.App.1980). In Shaw, Defendant performed a surgical procedure on the Plaintiff in February of 1975 that necessitated corrective surgery approximately one month later. Id. at 214. Plaintiff remained under Defendant's care during the spring and summer of 1975 and underwent additional surgery in August of 1975. Id. Plaintiff filed suit in April of 1977 based on nerve entrapment that occurred during the March 1975 surgery. The court held that summary judgment was inappropriate because Plaintiff's claim was not time-barred under § 516.105 because of the continuing care and treatment provided by Defendant. Id. at 218.
The court in Shaw focused on the continuing doctor-patient relationship that was at the core of the Plaintiff's claim. No similar relationship existed in the present case. Neither Mr. nor Mrs. Smith was under the continuing care of Defendant. Plaintiff notes the Shaw court's emphasis on the continuing physician-patient relationship. However, Plaintiff does not even attempt to argue that a similar relationship existed in the instant case such that the statute of limitations should be tolled.
The Court finds that neither Cress nor Shaw support Plaintiff's continuing negligence claim and declines to find that Defendant's alleged act of neglect was continuing. Therefore, the statute of limitations provided in § 516.105 expired two years from the date of the alleged act of neglect. Specifically, the statute of limitations began to run no later than October 31, 1986 and expired on November 1, 1988, barring Plaintiff's claim against Defendant filed in August of 1989.
For the foregoing reasons, Defendant Red Cross' Motion for Summary Judgment is granted. In view of that ruling, the Court need not address the merits of Mrs. Smith's claims against Defendant Red Cross. ACCORDINGLY,
IT IS HEREBY ORDERED that Defendant American National Red Cross' Motion for Summary Judgment [docket # 8] is GRANTED and Plaintiff Mrs. Smith's lookback claims against the American Red Cross are DISMISSED with prejudice. An appropriate judgment will accompany this Memorandum and Order.
IT IS FURTHER ORDERED Plaintiff's Motion for Oral Argument [docket # 10] is DENIED as moot.